IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| J. Kay Raver, | : | |
| Plaintiff | : | Civil Action 2:12-cv-00830 |
| v. | : | Judge Frost |
| Lincoln Life & Annuity Company of New York, *et al.,* | : | Magistrate Judge Abel |
| | : | |
| Defendants | : | |
| | : | |

**ORDER**

This matter is before the Magistrate Judge on plaintiff J. Kay Raver's January 23,

2013 motion to compel discovery (doc. 12).

Background. This is an action under ERISA to recover a $100,000 life insurance

accidental death benefit. The complaint alleges that on April 26, 2011, Donald W. Raver,

Jr., age 30, was killed by injuries sustained in a single vehicle accident on Mink Street in

Licking County, Ohio. Lincoln Life & Annuity denied the claim on the ground that a

contributing cause to Mr. Raver's death was his being under the influence of

Oxycodone. The policy provided that benefits were not payable if a contributing cause

for the loss is the insured's being under the influence of any non-prescribed narcotic.

In denying the claim, Lincoln Life & Annuity relied, in part, on a report from Dr.

Alan Weiner, who is board certified emergency medicine:

> We asked Dr. Weiner if the level of oxycodone that was found in the blood
> was a contributing factor in Mr. Raver's death. His response was yes. The
> level of oxycodone was more than twice the upper limit of normal for a
> patient who was chronically prescribed the drug. There was no evidence
> that Mr. Raver was prescribed oxycodone. These effects would be more
> pronounced in a person who was not chronically taking the drugs and
> had not developed a tolerance to the effects of the drug.

Defendant's February 12, 2013 Memorandum in Opposition, Exh. A, Doc. 13-1, June 20, 2012 Letter from Theresa Henerson, Disability Appeals Specialist to Wm. Douglas Lowe, PageID 147, 148. Plaintiff was provided a copy of Dr. Weiner's report and given an opportunity to respond to it. Plaintiff provided Lincoln Life & Annuity with a report from Dr. Alfred Staubus, who said that Mr. Raver was not prescribed Oxycodone, that he had a history of treatment for Oxycontin addiction. It appeared that he had relapsed and again was abusing Oxycodone. Dr. Staubus said "it was unreliable to speculate regarding the likelihood that oxcodone toxicity contributed to the accident." Since he was an Oxycodone abuser, it was possible that he had developed a tolerance to the drug. *Id.*, PageID 149.

Arguments of the Parties. Defendant Lincoln Life & Annuity Company of New York serves as both plan administrator and the payor of benefits. According to plaintiff, the Supreme Court has found that such a situation creates an inherent conflict interest that must be considered by a court when it reviews the decision of the insurance company. Plaintiff argues that she is entitled to obtain discovery to directed toward this conflict of interest.

In response, defendant argues that there has been no showing of actual bias or procedural irregularity. Defendant maintains that it does not establish numerical quotas requiring a certain number of claim approvals, denials or terminations, nor are employees evaluated on the number of approvals or denials. Defendant further maintains that employees are evaluated, in part, on the accuracy and timeliness of their claim investigations and decisions. Defendant maintains a separate appeals unit for independent consideration of denied or terminated claims.  Employees in the appeals unit are charged with making independent assessments of the underlying claim decision based on all the evidence in the claim file in conjunction with the plan documents and any new information obtained or received. Defendant further maintains that benefits specialists and appeals specialists do not discuss the claims with anyone who works in defendant's financial departments. Additionally, members of the claims department and appeals department are not provided any bonuses, commissions or any other incentives, financial or otherwise, based on the claims that they approve, deny, or terminate.

Discussion. Discovery is permitted "regarding any nonprivileged matter that is relevant to a party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Typically, however, a court cannot consider evidence outside the administrative record in adjudicating an ERISA action. *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir. 1998). An exception to this general rule is permitted when evidence outside the record is offered in support of a procedural challenge to the administrator's decision, such as an alleged

3

lack of due process or alleged bias. *Wilkins*, 150 F.3d at 619 (Gilman, J. concurring); *Johnson v. Conn. Gen. Life Ins. Co.*, 324 Fed App'x 459, 466 (6th Cir. 2009). The presence of a conflict of interest, however, does not mean that discovery will automatically be available to plaintiff. *Johnson v. Connecticut General Life Ins. Co.*, 324 Fed App'x 459, 467 (2009)("District courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenge under *Wilkins*.").

In *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008), the Supreme Court held that a an inherent conflict of interest exists when a insurance company serves a dual role as a plan administrator and as a payor of plan benefits. The Supreme Court stated that this conflict of interest is one factor among many that a court must take into account:

> In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. . . . It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* at 117(internal citations omitted.)

4

Defendant has provided information by way of the affidavit of Barbara True, AVP of Claims Shared Services outlining the manner in which defendant "has taken active steps to reduce potential bias and to promote accuracy,"[1] and plaintiff has failed

_____

[1]Ms. True's affidavit states, in relevant part:

3. Lincoln Life & Annuity does not establish numerical quotas requiring a certain number of claim approvals, denials or terminations, nor are employees evaluated on the number of approvals or denials. Rather, employees are evaluated, in part, on the quality, accuracy and timeliness of their claim investigations and decisions.

4. Lincoln Life & Annuity maintains a separate appeals unit for the independent consideration of denied or terminated claims. Employees in the appeals unit are charged with making independent assessments of the underlying claim decision based on all of the evidence in the claim file in conjunction with the plan documents and any new information obtained or received.

5. Benefits Specialists and Appeals Specialists do not discuss the claims with anyone who works in Lincoln Life & Annuity's financial departments. Members of the claims department and appeals department are not provided any bonuses, commissions or any other incentives, financial or otherwise, based on the claims that they approve, deny or terminate.

6. In part to independently assess the accuracy and timeliness of claim and appeal decisions, Lincoln Life & Annuity has in place a quality assurance program.

7. Lincoln Life & Annuity contracts with outside vendor agencies which select independent physicians to conduct medical examinations or file reviews.

8. These physicians do not have the authority to make benefits determinations, but instead answer specific medical questions that our claims analysts pose.

to demonstrate that further discovery is warranted. *Metropolitan Life Insurance Company*, 554 U.S. at 117.

For the reasons stated above, plaintiff J. Kay Raver's January 23, 2013 motion to compel discovery (doc. 12) is DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge.  The motion must specifically designate the

---

9. The physicians' compensation is not tied to any particular outcome, and Lincoln Life & Annuity does not pay the physicians directly.

10. Lincoln Life & Annuity contracts with ten or more outside vendors and assigns cases randomly such that no one vendor obtains a disproportionate amount of referrals.

11. Lincoln Life & Annuity compensates the outside vendors pursuant to arrangements agreed to before any review is conducted by the physician employed by the outside vendor. Such compensation does not vary based 011 the outcome of the physician's review.

12. The outside vendor utilized in the instant lawsuit, AHMed Health Management, retained the services of Dr. Alan Weiner to review Mr. Raver's file. This was the first time Dr. Weiner reviewed a Lincoln Life & Annuity file.

Defendant's February 12, 2013 Memorandum in Opposition, Exh. B, Doc. 13-2, February 12, 2013 Affidavit of Barbara J. True, PageID, 151, 152-53.

6

Order, or part thereof, in question and the basis for any objection thereto.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

s/Mark R. Abel
United States Magistrate Judge